JOSHUA B. HILL v. S. T. NICHOLSON AND WIFE.

*Tax Title—Notice—Mortgagee.*

1. A sale of land for taxes will not pass the title unless the notice of the levy and sale has been first served upon the "delinquent" as directed by the revenue law.

2. By "delinquent" is meant the *legal owner* of the land proposed to be sold; a mortgagee is such an owner, and entitled to have such notice.

3. The act incorporating the town of Washington (Acts 1846-'47, ch. 199) requires the method of procedure, in levying upon and selling real estate for municipal taxes, to conform to that of the general revenue law in force at the time of the levy and sale.

(*Whitehurst* v. *Gaskill*, 69 N. C., 449, and *McCrary, Ex-parte*, 84 N. C., 63, cited and approved).

CIVIL ACTION tried before *McKoy, J.*, at Spring Term, 1882, Superior Court BEAUFORT county.

The plaintiff derived title to one moiety of a lot in the town of Washington, numbered 62, under a sale for taxes, and a deed therefor executed on March 10, 1870, by Jesse M. Pringle, tax-collector, to S. W. Stilley, and subsequent conveyances of said moiety to himself. The tax, for which the sale was made, was levied the preceding year by the board of town commissioners upon the lot given in for that purpose by James H. Williams, and included in a list made out under their direction and delivered by their clerk to said Pringle for collection in September, 1868, together with a warrant, under their several hands and seals, "commanding him to proceed and collect" the taxes specified in the list, and to "use all lawful means to enforce the payment of the taxes and make return as required by law."

Under this authority, and after a personal demand, the collector issued a written notice of the proposed sale, specifying time and place, on the said Williams, and, after due advertisement, sold the lot at the court-house door of the county in said town to the said Stilley for the sum of $3.25, that being the tax on a moiety of the lot with the costs incurred in making the sale.

The sale was ordered by the board, and, on report thereof, a deed of conveyance directed to be made to the purchaser.

The lot was conveyed on October 16, 1854, by said James H. Williams and wife Frances, one of the defendants, and John G. Williams to Jesse B. Lucas, in a deed of mortgage to secure a debt of $400 due by bond of the same date and payable with interest on the corresponding day of the following year. Payments were made towards the debt, the last of $500 being made on March 28, 1859, and endorsed on the mortgage in the handwriting of said Lucas.

In February, 1876, suit was instituted by the heirs-at-law of the mortgagee, to recover possession of the lot, to which his administrator afterwards became a party, and they demanded a foreclosure and sale, against certain defendants, and among them the *feme* mortgagor, in defence to which they alleged a satisfaction of the mortgage by payment of the secured debt. The asserted payment was contested and judgment rendered at June term, 1880, of Beaufort Superior Court for the residue of the debt, after deducting the several partial payments, and directing a foreclosure and sale. The evidence of this proceeding was offered to show the mortgage subsisting and in force and that the title was in the mortgagee or his heirs at the time of the collector's sale, and was admitted by the court, after objection from the plaintiff. It was conceded that no notice of the proposed sale was given the mortgagee who resided in the county and was accessible for that purpose. The court ruled that for want of such notice the sale made by Pringle was void and passed no title to the purchaser.

There was a verdict for the defendant and judgment, from which the plaintiff appeals.

*Messrs. C. F. Warren* and *Rodman & Son*, for the plaintiff.
*Mr. Geo. H. Brown, Jr.*, for the defendants.

SMITH, C. J., after stating the facts as above: We pass by the objection to the admissibility of the record of the foreclosure proceedings, with the remark that during the interval between the last endorsed partial payment in March, 1859, and the institution of the suit for foreclosure in February, 1876, the ten years had not elapsed (excluding the period in which the statute raising the presumption of satisfaction from lapse of time did not operate), and the debt remained and was adjudged to be due, and that presumption does not arise upon the facts now stated; so that the objection, not so much to the introduction as to the effect of the record of that proceeding, is without force.

The single point presented is whether the notice has been served upon the proper person, and if not, is that an essential prerequisite to the statutory authority conferred upon the collector to sell and divest the estate of the legal owner in the lot.

We do not feel at liberty to disturb the decision in *Whitehurst* v. *Gaskill*, 69 N. C., 449, and approved in *McCrary, ex-parte*, 84 N. C., 63; and consider the construction of the revenue law settled that, the notice directed to be personally served on the delinquent, has reference to the legal owner, and when the land is under mortgage the mortgagee is such owner and the person entitled to have such notice. The language contained in the act applicable to the facts in *Whitehurst* v. *Gaskill*, and there construed, is that " he (the sheriff) shall notify the delinquent of such levy, and of the day and place of sale by service of a notice, stating those particulars, on *him personally*."

The enactment in force when the sale was made by the town tax-collector is found in chapter 22, section 55 of the Acts of 1866, and directs that the sheriff shall return to the next county court held after the 1st day of January, "a list of the tracts of land which he proposes to sell for taxes, therein mentioning the *owner or supposed owner* of each tract, and if such owner be unknown, the last known or reputed owner," &c.

It further provides in the succeeding paragraph that, the "Court shall order the clerk to issue notice to every person

whose land is returned as aforesaid, and a copy of the notice shall be served by the sheriff upon the *owner* or his agent, and returned to the next county court," &c.

The substantial change in the later enactment is the substitution of the word "delinquent" for "owner," and to require the sheriff to prepare and serve the notice on the delinquent tax debtor, and the former more clearly indicates the person upon whom the required service must be made. The decision is, therefore, in this particular, more appropriate to proceedings in the enforcement of tax collections by sheriffs under the law of 1866, and, thus interpreted in 1873, the same words have been inserted in all subsequent legislation prescribing the method of raising revenue, receiving thereby the sanction of the law-making power to their meaning.

The next inquiry is whether the town collector must pursue, as far as practicable, the same mode of procedure as the sheriff is required to adopt in selling lands for unpaid taxes, and if so, the provisions of the statute existing at the time of the enactment of the charter of the town, or that in force at the time of sale.

The eighteenth section of the act incorporating the town of Washington, which alone has any bearing upon the present controversy, is in these words:

That on or before the first day of August (since changed to September) in each and every year, the said board of commissioners shall cause the said town clerk to make a fair copy of said list, made by him as aforesaid, and they shall deliver said copy to said collector, together with a warrant under the hands and seals of them or a majority of them, authorizing and directing said tax-collector to collect said taxes in said list mentioned, and to make return thereof, and of said warrant, on a certain day to be therein mentioned; and the said collector is hereby *vested with all the powers and rights for the collection of said taxes which the sheriffs have for the collection of State taxes*, and said tax-list and warrant shall be of the nature of a judgment and execution

for the taxes therein mentioned.   Acts of 1846-'47, ch. 199, sec. 18.

It is quite obvious, we think, that the required conformity of procedure on the part of the town officer to that prescribed for the sheriff was a continual conformity allowing any statutory changes made for the latter as far as practicable.   The mandate is to the officer to pursue the course prescribed for the sheriff in his office of collector, not only as the law then was but as it might be amended thereafter.   When other or variant powers and rights were conferred upon the latter officer, then the same were vested in the former by the very words of the act, for they must always, as far as may be, be the same as to both.

The method of proceeding prescribed for the sale of land for taxes by the town officer is closely assimilated to the general law regulating the action of the sheriff as collector, and then follow the words which bestow on the former "the powers and rights" possessed by the latter, and, of course, with the like conditions and limitations attached.

It can scarcely be contended that the municipal has larger power than the county collector or is exempt from his restraints. As this notice to the land owner of the proposed sale, whether prepared and served by the officer or issued from the authority that gives him the enabling process to sell, is an underlying condition and prerequisite to the exercise of the legal authority to make the sale when the sheriff is to act, so must such notice be indispensable to a valid sale when made by the collector of the town.   No good reason can be suggested why it should be dispensed with in the one case rather than in the other, and such a construction would be repugnant to the terms and evident meaning intended by the General Assembly.   But if it were otherwise, and the mode of enforcing payment of taxes by a sale of the delinquent's land, prescribed for the town collector, as it existed when the incorporating act was passed, is fixed and must be preserved by him notwithstanding subsequent variations in the statutory directions to the sheriff, the result would not be

more favorable to the case of the plaintiff, for the absence of the necessary notice, under the decision referred to, would be equally fatal to the title thus derived.

There cannot be an exact conformity in the proceedings, nor does the statute require it in all particulars, but they are assimilated as far as may be, and the substantial directions must not be disregarded.

We do not undertake, nor is it needful, in passing upon this appeal, to draw the line of separation between those directions of the statute which are mandatory and essential and those which are directory merely; nor to say to what extent an observance of these directions is requisite to an effectual sale, when it is apparent from the relations of the officers to the taxing body from which each receives its authoritative process, they cannot pursue the same precise line of action. But the giving notice is necessary in both cases, in order to the divesting of the owner's estate by a sale, and this whether it proceeds from the county court or from the commissioners and is served by the officer in the one case, or is the sole act of himself. Such is the ruling of the court and this is an indispensable prerequisite in exercising effectually the special authority conferred.

The plaintiff's counsel further asserts in his argument here that he was denied the opportunity of showing an adverse occupation of the lot under the deed as color of title for a sufficient time to perfect it, and that in this there is error.

It is true the record shows that the plaintiff was proceeding to show possession of the southern part of lot No. 62, from a period soon after the execution of the collector's deed nearly up to the commencement of the suit, but for what purpose does not appear, when the defendant was, without objection, allowed to introduce evidence showing the invalidity of the deed for want of notice; and when the ruling was made of its insufficiency, he did not insist upon any ground of recovery, such as is now urged. On the contrary, the whole argument then pressed was directed against the decision in reference to the deed, and if the plaintiff

intended to rely upon possession under color, he should have asked that this ground of claim be also passed on by the jury. The judge adhered to his opinion, and without more, in deference thereto the jury rendered their verdict for the defendant. The controversy hinged upon the question of the efficiency of the sale, and was determined by the ruling of the court upon that question.

The exception is not taken to this disposition of the case, and it cannot be now entertained upon the appeal.

The judgment must therefore be affirmed. It is so ordered.