O. E. EDWARDS, Jr. et al v. A. H. LYMAN.

(Decided May 24, 1898).

*Action to Remove Cloud on Title—Tax Deed—Description—Trial.*

1. In the trial of an action to remove a cloud upon title cast by a tax deed inadvertently given for a tract different from the one advertised and sold for taxes, it is not necessary for the person whose land has been so inadvertently conveyed to do more than to show a deed or a will to the property antedating the sale or such adverse possession as would give title in fee.

2. A notice of tax sale described the land as situated on a river, adjoining the lands of F. on the North and R. on the East. The land conveyed by the Sheriff was, in fact, a mile and a quarter from the river and adjoined the lands of R. on the North and did not touch the lands of F. at all. *Held,* that the deed was inoperative, the description not being such as might be cured under the Statute relating to tax deeds but a description which did not fit the land that was advertised and sold by the Sheriff.

CIVIL ACTION tried at August Term, 1897, of BUNCOMBE Superior Court, before *Norwood, J.,* and a jury. The action was brought by the plaintiff (under Chapter 6, Acts of 1893) as the owner, by purchase under foreclosure of a mortgage, of certain lands for which the defendant held a deed from the tax collector. The facts sufficiently appear in the opinion. There was a verdict for the plaintiff on the issues submitted and from the judgment thereon the defendant appealed.

*Messrs. W. B. Gwyn* and *Merrimon & Merrimon* for plaintiffs.

*Messrs. F. A. Sondley* and *R. O. Burton* for defendant (appellant).

MONTGOMERY, J.: This action was brought by the plaintiff, who is in possession of the tract of land des-

cribed in the complaint, under Chapter 6 of the Laws of 1893—to have an adverse claim of defendants to the land determined. The defendant in his answer set up a deed made to him, by a tax collector, to the land and prays to be put in possession of the same. The defendant contends that, under sub-Section 3 of Section 66 of Chapter 297, Acts of 1893, under the head of "conclusive evidence of facts," the plaintiff, as a matter preliminary, must first show that he or the person under whom he claims title had title to the land at the time of the sale, and that all taxes due upon the land have been paid by the plaintiff or the person under whom he claims title, and the defendant further insists that the decision of this Court in the case of *Moore* v. *Byrd*, 118 N. C., 688 changes the burden of proof even where the purchaser at the tax sale brings the suit to recover the land and makes the tax deed *prima facie* title. We are of opinion that, in this action, the plaintiff had complied with the requirements of the Statute and with the spirit of the decision in the case of *Moore* v. *Byrd*, *supra*, as to proof of title in the person from whom he claims. We think that it is not necessary, in suits involving title to land claimed by one of the parties through a tax title, for the person whose land has been sold for taxes to do more than to show a deed or a will to the property antedating the day of sale, or such adverse possession as would give title in fee. The ordinary rules of proving titles in actions between parties for the possession of land ought not to prevail in suits of this nature where the sheriff's deed for taxes is the claim through which both of the parties claim. Without any additions on either side the title to the land is out of the State because, by a sale of the land for taxes, the State by authority of the sale admits title out of itself

and to be in the person whose land is sold for taxes at the time of sale. And, besides, both the claimant under the tax sale and the former owner are claiming under the same title. The plaintiff, having met this difficulty as we think, according to the proper construction of the Statute, insists that there has been an entire omission to sell the property and that such omission is fatal to the defendant's deed; that the law would only raise from the deed, if it conveyed the land at all, a presumption that the land was sold for the taxes, and that the testimony shows that the tract of land claimed by the plaintiff was not in point of fact sold by the collector. And we are of the opinion that the view of the law taken by the plaintiff is the correct one; and that the testimony, if believed by the jury, (and they did believe it, from their verdict) was such as to render inoperative the deed under which the defendant claims because of its utter failure to convey the land which was actually sold by the collector, and that his Honor was right in instructing the jury to answer the first issue "Yes" if they believed the testimony. The publication of the notice and the report of sale by the tax collector showed that the land which was conveyed in his deed to the defendant was not the land which he sold for taxes. The description of the land in that deed was not a defective description which might be cured under the Statute, but it was a description which did not fit the land which was advertised and sold by the collector. That deed did not describe the land which was sold by the collector in any respect but did, with some degree of certainty, describe another tract. The description in the advertisement was, "Beaver Dam—Vance, R. B. and Z. F., two-third interest in 156 acres of land on East margin French Broad River, adjoining lands of W. T.

Reynolds on East and M. J. Fagg on the North," and the description in the sale book is East margin French Broad River adjoining lands of W. T. Reynolds on the east and M. J. Fagg on the North. The testimony showed (the defendant introduced no testimony) that the tract of land described in the complaint did not adjoin the lands of Fagg at all, and only adjoined slightly on the *North* the lands of Reynolds, and was at its nearest point to the French Broad River from one quarter to three eighths of a mile away. That part of the description in the defendant's deed from the collector, which is definite and by metes and bounds, is precisely the description given to the land, in which the plaintiffs claim, and the description is that of an entirely different tract of land from the land which the collector sold for taxes. The recent decisions of this Court in the matter of contests over title to land sold for taxes show that the Court is maintaining the Act of the Legislature on that subject almost to the letter and in its integrity; but we cannot go to the extent insisted on by the counsel of the defendant in this case. It has been shown by the evidence undisputed that the tract of land which was advertised and sold by the Sheriff was not the tract of land conveyed in his deed to the defendant.

Affirmed.

CLARK, J., concurring: The Statute provides that "no person shall be permitted to question the title acquired by the Sheriff's deed (under a tax sale) without first showing that he or the person under whom he claims title had title to the property at the time of the sale and that all taxes due upon the property had been paid by such persons or the persons under whom he claims title as aforesaid." This was quoted *verbatim*

in *Moore* v. *Byrd*, 118 N. C., 688 and the legislative
power to enact it has been sustained in that and other
cases.    As the law has always required a plaintiff in
ejectment to prove title out of the State, it would be
very singular if the law-making power could not pro-
vide that a conveyance made by virtue of a sale under
its statutory and preferred lien for public dues should be
a *prima facie* title and not to be questioned save by one
who shows that "all taxes due upon the property have
been paid by such persons or the persons under whom
he claims title as aforesaid."    The opinion in the present
case expressly sustains the Statute, but I apprehend the
true ground of distinction between this case and *Moore*
v. *Byrd*, *supra*, is that in the present case the land
covered by the deed is not the land which was sold for
taxes; besides, the plaintiff here is in possession and
seeks not to recover possession by virtue of a tax deed,
but to remove a cloud upon title cast by a tax deed in-
advertently given for a tract different from the one
sold, and the taxes have been duly tendered by the
plaintiff.

One who intentionally shirks payment of his taxes
throws the payment of them upon better men and is
entitled to no more consideration than the coward who
leaves the fight and casts an increased peril upon his
braver comrades.    If one who owes taxes inadvertently
fails to pay he is given the benefit of an advertisement
for sale and a personal notice 30 days before the sale,
the publicity of a sale and 12 months thereafter in
which to redeem, to which, besides other safeguards,
the Legislature has re-enacted, in compliance with the
suggestion of this Court in *Sanders* v. *Earp*, 118 N. C.,
275, the provision of the Act of 1887, which for some
cause had been dropped, that (Act of 1897, Chapter

169, Section 64) the purchaser shall serve a specific notice, with description of the property, upon the person in possession and upon them in whose name the land was assessed for taxes, at least three months before the expiration of the time allowed for redemption before such purchaser shall be entitled to a deed. And even one who purposely fails to pay his taxes has the same indulgencies.

The purchasers of land for taxes may in some cases be liable to moral censure for getting property at an under price, but the Courts cannot discountenance them, since, without purchasers, whom the law invites, the public dues upon the property of those who shirk payment of taxes could not be had. Purchasers of land sold for taxes are far more deserving of consideration than tax skulkers. Under the former tax laws the sale of property for taxes was so environed with technicalities that purchasers for taxes very rarely got a good title with the result that the evasions of taxes increased at a great rate with a crushing effect upon good citizens who were thus saddled with the entire expenses of government. To remedy this, the United States government, and most of the States, enacted a reform in tax sales, similar to that enacted in North Carolina in 1887 (Chapter 137) which has been everwhere sustained by the Courts. *De Treville* v. *Smalls*, 98 U. S., 517; *Varnum* v. *Shuler*, 69 Iowa, 92; Black on Tax Titles, Section 418 and many others besides and in this State; *Stanley* v. *Baird*, 118 N. C., 75; *Peebles* v. *Taylor*, Ibid, 165; *Sanders* v. *Earp*, Ibid 275; *Moore* v. *Byrd*, Ibid, 688; *Powell* v. *Sikes*, 119 N. C., 231. The letter of the Statute and every consideration impel us to adhere to what has been laid down in these cases.